for the Appellant is Kelly Gordon, U.S. Chief, under the Appellate Gregory Scott, the Court of the Mipson. May it please the Court, Counsel. My name is Kelly Gordon and I represent the Respondent Appellant Jeffrey Brower. Today we raise two issues. One, that the trial court's award of maintenance was an error. And two, that the trial court improperly calculated child support. What's your best case to say that was error to grant maintenance in this case? What's your best case? Well, your... Actually and comparing it. Just tell me, which cases do you use? I don't necessarily have one that's factually similar. The case of Selinger, I think, lays out a lot of the laws for maintenance. Although Selinger, like I said, is not necessarily fact similar because in Selinger the award was low and the court came back and increased it. But I think the laws that have been laid out in Selinger, as well as some of the procedurals, would apply in this case. Setting forth the factors that are set forth in the statute, determining the amount of maintenance, which factors did the trial court incorrectly use? Your Honor, I think that the trial court incorrectly looked at the following factors. The standard of living, well, correctly looked at them but applied them incorrectly. The standard of living, the income and the property. All right, now let's just look at standard of living. Okay, sure. Hers is $12,000. Does that include one of the children? Well, the maintenance amount is $8,000. No, I'm talking about her expense. Oh, yes, it does include the children. Hers was $12,000 and something. His was $11,000 and something. That's by himself? Yes. How is that $1,000 more for her and running a home for a child? How reliant compared to what he says he's spending? Well, I think when you look at her needs, though, as far as him spending $11,000 and her spending $12,000, and she has a child, his expenses are laid out. Those are what his expenses are. So were hers. Correct, correct. And on cross-examination, we also went through and there were a couple of expenses there that she no longer has, which would take her actually below the $12,455 mark of where she had on her app, David. Some of those expenses were, for example, her expense for her vet bill of $200 per month. She testified that she no longer had that anymore. Her $435 expense for her son's car, she no longer has that anymore. The $270 bill for counseling that she previously had per month, she stated that it would no longer be that high because the reason she was going was because of the divorce. So if you take those expenses off, plus she gave gifts and donations of $600 per month. Likewise, he gave donations as well. I understand that. And I'm sure Council will point that out. However, if you take all those off, her expenses that she has in her affidavit of $12,455 are far less than that. And what the trial court did by ordering the $8,000 in maintenance and the $4,000 in child support, then gives her over what her needs are. And the statute provides that the needs of the parties are to be looked at. Well, that sounds to me like the trial court did look at them. Might have set it a little higher according to your standard, but he did look at them. Yes, correct. He did look at the standards. You cite the case of In re Marriage of Worries for the proposition that there is an affirmative duty on the spouse requesting maintenance to seek appropriate employment and make a good faith effort to become financially independent. Has the Supreme Court of Illinois ever so held? I'm sorry? Has the Supreme Court of Illinois ever so held? I don't think Worries was overturned. That wasn't my question? No, I do not believe so. Okay. That was 17 years ago. Is this court correct to have so held? I believe so. And we are not asking, we are not saying at all that she is to become financially independent. I would not even go out on that one to say that. But what we are saying is that she should have an obligation to go out and at least seek employment. Why? I'm sorry? Why? So part of the maintenance is for the two of them to cut ties. That's what the courts have looked at, is try to cut ties. Well, the reason I ask that is I went back and checked Worries. I was on the panel and I think it was probably dubious law then. It's even more so now. Worries cites as its own support for that proposition the McNeely case, which was a decision of the first district a few years earlier. And McNeely, in its holding, quoted Section 504B at the time, which had six propositions to consider. The legislature has since amended that section. There are now 12 separate things to consider in determining maintenance. One of them is not this proposition that somehow there is an affirmative duty on the spouse requesting maintenance to seek appropriate employment. Did they forget that? If that is true, Your Honor, then I am incorrect. Well, to what extent does that play a role in your argument? The only way that that would really play a role, Judge, is what the court had said. The trial court said that she is capable of working and getting employment. She's a registered nurse. She worked throughout the marriage, albeit from up until 2001, she worked at least part-time. She's a registered nurse. She has her license. She could go out and find a job. The court stated that if she makes anything less than $40,000, then that would not be a reason for him to come back and modify child support. Which means if you add the $40,000, say $39,000, onto the $8,000 that she's already getting in maintenance, just that alone would be well over the $12,455 need that she has. And I think that's the only way that her getting a job comes into it. She was a stay-at-home mom with the kids. For a 31-year marriage? Yes. She did work part-time. When was the last time this court reversed the maintenance of a three-decade marriage? Judge, I'm sorry. I'm not aware of that. Is the standard here before us whether Judge Narduli's decision was unreasonable? It was an abuse of discretion, yes. That didn't affect what it means? Yes. Well, that's a pretty tough standard. I know it is, Judge. I'd agree with this. Prior to the motion to reconsider, he did find that the maintenance should have been $7,000 and the child support $3,000. On the motion to reconsider, the petitioner alleged, among other things, that the deduction that the judge took for the pension amount, which was $53,000, should not have been deducted. In his motion to reconsider, in her motion to reconsider, they didn't bring up that her needs had increased or that she needed more money. Nonetheless, the trial court increased child support by $1,000 and increased maintenance by $1,000. But if you take that $53,000 that he deducted at first and then take it back out, then that difference is only, 20% of that is only $891. Nonetheless, the court increased both the child support and the maintenance by $1,000, even though from the original trial until after the motion to reconsider, the only difference that the court was really seeing was the $891. So if the court had come up with this figure to begin with, then there would be no problem? Well, then I think that we would have looked at it differently. One of the factors to be considered in the statute is the present and future earning capacity of each party. And I take it Dr. Brower is in good shape? At the time of the trial, yes, he was. Is there any reason, should Judge Nardulli, in looking in the future,  I'm sorry, that his capacity would be reduced? Your clients? No. And if it was, I mean, we'd file a motion to modify it. So his ability to pay this sum as ordered isn't in doubt, is it? He just doesn't want to pay? Yeah. He's got better things to do with his money. Judge, he has the ability to pay. That part of it, I think, is clear. The part of the statute that looks at what her needs are, we do not believe that her needs justify the award that was ordered by the court. And also the other factor, along with the incoming beach property, is to look at what was the apportionment of the marital property. And when we look at that, he owned Springfield Clinic stock, which can only be owned by a doctor. And so Judge Troutcourt ordered that Jeff pay $50,000 per year for the next seven years, and then a $10,000 payment, which equates to approximately $310,000 over the next few years. So she's going to be having that money come in, and I understand she doesn't have to be reduced to poverty and she doesn't have to use her assets. However, those are all things that will go towards her expenses. In addition, when she purchased a house prior to the hearing, she financed 100% of it. So at the time of trial, her monthly payment for that house was $2,000. She testified that she was going to take part of the $47,000 that she had received from the sale of the marital house to put down on her new house. Well, I want to go back to what I asked to begin with. Since Dr. Brower, if he is in fact, if this maintenance order stands, I can see it having no dramatic effect, indeed no effect at all, on how he's going to live his life. What's the point in your argument that his former wife should have an affirmative duty to seek employment just because? Kind of stick his finger in her eye? No. Then what's the point of that? To reduce his maintenance obligation that he will have no difficulty paying? Part of that, yes. And also that she has, even though she has not been working since 2001. It will be good for her soul to get back into the marketplace now? She has still maintained her registered nursing license, which she has to do either every year or every, I think it's every other year actually. She's continuing to do that. Why is it in his interest to require her to go out and seek employment? Well, because then it will reduce his maintenance, yes. Not necessarily, though, would it? No, not necessarily, because the way the trial court ordered was that if she makes anything below $40,000, then that would not be considered a change for him to come in and modify the maintenance. But he'll just sleep better at night knowing that she can't sit at home. I have a more global question, and that is how we look at the earnings of a physician owner, member of Springfield Clinic. As I understand it, they make X amount of dollars per year, but according to some formula Y gets plugged back into the corporation and they then own a fractional share of the whole corporation. And I understand that the shares can only be owned by a physician member of the clinic. But that seems to be earned income that is, by contractor, which is obviously voluntarily entered into, plugged back into a business. And do they pay taxes on the whole amount? I'm sorry. If the doctor made $800,000 a year, but had to take $300,000 and put it into the corporation according to the contract he's got with the clinic, does he pay taxes on $500,000 or $800,000? I think he'd pay it on the $800,000. And if he pays taxes on the $800,000, why doesn't he pay child support on the $800,000? I think, Judge, if you're talking about the passive income that we talked about at the lower court, that's money that is going into the company, but he's not realizing any of that money. Until when? I mean, when he retires he gets it out, right? Right. But it will depend, too, on what the value of the stock is at the time. You know, what the value of each share of stock is. Well, anybody who drives up 6th Street knows that they've about increased the value of physical assets by about a time and a half, right? But if he pays taxes on the whole $800,000, I still don't understand why that's not the number for child support. Judge, I didn't necessarily brief that issue because I don't think that was one of the issues that was brought up. Right, it's just something that occurred to me. Actually, it's in my brief. In my response to Mr. Scott's motion to reconsider, I believe I cited some cases that even held that the passive income is not considered, or it's at the judge's discretion. Well, but it's not really passive income. I mean, if he earned $800,000, okay, but because of his contract at the clinic, $300,000 had to go into the clinic's coffers and basically bind additional shares of the clinic on an annual basis. That still earned income. Oh, well, there's a difference between him buying shares of stock because he can only do that at certain times. There's also, though, he has money goes back into the company to retain earnings. But that's separate than the stock. Okay, retained earnings then. Okay. But there's still earnings, and why aren't they earnings for child support? Because what the case said and what the court looked at is he's not realizing that money. But he pays taxes on it, right? Well, actually, when you say he pays taxes, he actually gets a tax draw, which is income that the court did look at. He gets a tax draw to pay the taxes on that money. And if you look at, I don't know the number of the exhibit, but if you look at his paystubs, it even says tax draw. And that's he's receiving taxes to pay on the money that he's not getting anyway that's going back into the clinic. Okay. I threw you off your argument. I just had a lot of questions, so go ahead. That's fine with me. Pardon? I don't know. Along with that, since we were talking about the child support issue, when the motion to reconsider was filed, the petitioner argued that the mandatory pension contribution should not have been deducted, which was approximately $53,000. And on the order by the trial court, the order came back and said regarding his argument that it was well taken with regard to the court's deduction of the 401K contribution. But what the judge didn't say is we presume that he then took out the entire $53,000, but we don't necessarily know because the court didn't find that. However, what Dr. Brower testified to, that only a portion of that is voluntary, the rest of it is mandatory. For example, in 2007, his voluntary contribution was only $15,500. So the remaining amount was mandatory. So if the judge did not deduct any mandatory contribution, then that would be error. Counsel cites to a couple cases stating that we waived that issue. I don't believe we waived that issue. They brought it up for the first time in their motion to reconsider. We filed a response to their motion to reconsider stating, again, that there was a mandatory contribution. So once the trial court came back and ordered and stated that the argument was well taken, we filed our notice of appeal. The petitioner cites to the case of Menard or Meniere, saying that we waived the issue. However, the facts in that case are not similar to the case at Barr, in that in Meniere, the court did lay out what the party's net income was, and the court said that it would be a calculation to just take 20% of each one. That's not the case here. The case here is that if he did deduct all of the mandatory contribution that he deducted the first time, if he's taken that back out, then that would be error because he should get the deduction for his contribution. Likewise, the petitioner also cited to Harper, and again, that case is unlike the one at Barr. In Harper, the trial court did not lay out the factors of why it was deviating downward. In the case at Barr, the court did that. We're not appealing that. He did set out the factors in the initial order. For these reasons, we believe that the trial court erred on these two issues. Okay. Thank you, counsel. Mr. Scott. Counsel? Counsel. I believe that the court did not err in its ruling. In fact, we gave some consideration to coming here and asking for more money than what the court awarded. I'd like to address a few of the issues that the court has brought up with Ms. Gordon. Justice Appleton, you raised the issue concerning child support based upon the entire earnings and the way that it works with Dr. Brower. In fact, the evidence was that he had over $200,000 of additional income every year that is taxed to him, retained by the company. Then, in turn, his shares increase in value. In fact, we had argued at the trial level initially before judgment and then in our motion to reconsider that, in fact, the court could well and may give consideration to the fact of including that for child support purposes. In fact, attached to the motion for reconsideration as part of the initial brief you'll see on page, it's record 299, I had a in-plan calculation of that and that was $11,814 if you used his actual income that he generated through work and through ownership in the company. There is the Friesen case that dealt with the issue of passive income. Sorry, which one of you may have been on that panel, but the Friesen case dealt with the son who had an interest in the father's company and the court excluded that as passive income. I truly believe that there's a very good argument that the court should include this type of income. As I told the court in my brief, the clinic stock, it's not really stock, it's partnership ownership, increased for all the partners over $8 million in the short time of this trial. Every year, and his was valued at $741,000 at the time of trial, and every year it's getting bigger through his ownership interest and his combined efforts. I don't think there's any... Was that split off as a marital asset? Yes. He got the clinic stock at $741,000 and that's why he has to pay her back $330,000. This is a 50-50 division of assets. She didn't get any extraordinary assets. She didn't get any very liquid assets. One of the cases that I think supports the award of maintenance is the case of Rubenstein. That was a case that they actually sent back because they didn't give enough money to the wife of a physician. She went back for an MBA. In the Rubenstein case, they pointed out that she would never, ever be able to earn enough money to maintain the standard of living. One of the standards of living that they specifically mentioned was the ability to contribute to a retirement plan. Dr. Brower contributes $53,000 a year to a retirement plan. Justice McCullough was talking about my client's affidavit. My client's affidavit has $200 a month, $2,400 a year as a maximum she can stick in retirement. The differences of lifestyle that she can maintain versus what he can maintain is enormous. The $12,000 figure that is in her affidavit includes taxes based upon what she owed for the then $6,000 in maintenance. Her tax payments are going up. Her actual expenses will go up at the end of the day when you take into account what was awarded to her. She also has two kids at home. One child has now gone on to college, but at the time of the entry of the order, she had two kids at home. She had not worked since 01. Dr. Brower had said to her, you don't have to work. He even encouraged her not to work. This concept that, okay, now a divorced person, I guess a wife now must go out to try and work to diminish the potential income of a person that earns, on average, $552,000 a year. That doesn't include the $200 going into the pot that he's going to get back when he retires. If you throw in the $200 to the pot, this guy is making over $700,000 a year, and you're sitting there telling this lady that her award of $96,000 is somehow an abuse of discretion? Mr. Scott, I expressed my view earlier to Ms. Warren that Wary's is dubious, and I'm wondering to what extent is this creating problems for trial judges, or do they have the good sense to essentially disregard it? I would think that in these situations, most of the time, they don't take that in as a large factor. And even Judge Nardulli in this case indicated that unless she made more than the standard earnings of a person that works at a little bit above minimum wage that he wasn't even going to consider it. And I think realistically, like you'll see in this situation, where you have a spouse that stays home, raises kids, and by joint agreement has established a lifestyle of doing that, courts are not going to expect them to suddenly chuck all that and put the kids in a different situation. And her lifestyle has gone down, I mean, honestly. As they're living in a third of the house they used to live in, it's not like she's poor, it's not like she's not getting by, but they're not living the country club lifestyle like they did. And that's an adjustment. And I think this court has opined several times that there are adjustments when you're trying to split two houses, but she's adjusted down, and what she has is reason. I don't think anyone can look at this situation and say there was an abuse of discretion. I did want to point out that I filed a cross appeal that I didn't pursue, and I just didn't want to just leave that hanging with the court. The purpose of not pursuing that was I brought it initially with the idea that Judge Nardulli ordered my client to be able to obtain insurance for Dr. Brown. And the only issue that I had on that was what if he's not insurable? I was going to set that up. Because I'm not pursuing it, Your Honor. I just wanted to explain it to the court. You don't need to hear it then. That's fine. I just didn't want to leave that hanging for him. But as far as the child support argument, I see that as you didn't deviate enough. The court deviated. And I think at $4,000 I think it is definitely low. I think that the – but it's sufficient. I think that the deviation, the calculation that the court went through in its original order can easily be redone with the revised one. I would point out something that's different. The contribution or the money paid to the retirement fund is not mandatory. It all goes to one 401K. Now, they have partnership agreements between partners that say that, you know, if you get into this thing, we expect you to stay in there. But it's not a mandatory part of his employment. And that's one of the difficulties that you always face. This is something he chooses to do, and he has done this historically. How old is he, by the way? You spoke about his retirement. Pardon me? How old is he? She's 44. I think he's 46. But, I mean, he's going to be there for a while, I would hope, as is my plan. And with regard to maintenance, I think this gives her a reasonable ability to maintain herself. It allows her to maintain a home for her children. It allows the children and her to maintain a lifestyle somewhat like it was before, where she's a stay-at-home mom. And I would also point out that throughout this entire process, since 77 until right before the hearing in this case, there was very little visitation. So my client has been the person in charge of the children. And that has, you know, she's taken on a lion's share of parenting responsibilities and will continue to do so. And with little kids, the little girl is still in grade school. I don't think there's reason to say that she has to go out and earn money so that way he pays less maintenance. Thank you. Okay. Ms. Gordon, any rebuttal? With regards to the pension contribution, there is a portion of that pension contribution that is mandatory. As a partner, he has to put money into the 401K for the other employees. And he also testified to that at the trial. With regards to the maintenance, the standard of living, I think we pointed out that, yes, it is $12,000 that she needs for her needs. But, you know, as Mr. Scott said, that she's putting money away for retirement, the $53,000 that the court deducted is not all money that goes into his 401K. Only a portion of that is. And we believe that the money that she is getting with the award of the $7,000 and the $3,000 that the court initially ordered, that that would be sufficient for her needs for herself as well as for her children. Thank you, counsel.